IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARY ELIZABETH JONES, nka
MARY ELIZABETH JONES DLOUHY,

      Plaintiff,

  vs.

REGENCE LIFE AND HEALTH,
INSURANCE COMPANY,

      Defendant.

Civ. Case No. 10-6415-AA
OPINION AND ORDER

---

James G. Nelson
Nelson & MacNeil, P.C.
PO Box 946
Albany, Oregon 97321
    Attorney for plaintiff

Eric A. Lindenauer
John C. Rothermich
Garvey Schubert Barer
Eleventh Floor
121 S.W. Morrison Street
Portland, Oregon 97204-3141
    Attorneys for defendant

Page 1 - OPINION AND ORDER

AIKEN, Chief Judge:

Defendant, Regence Life and Health Insurance Company (Regence), moves for summary judgment pursuant to Fed. R. Civ. P. 56 on plaintiff's claims for an accidental death "Seat Belt" benefit and for unpaid voluntary life insurance benefits. The Court heard oral argument on November 10, 2010. Based on the hearing, briefing, and evidence in the record, defendant's motion is granted and this case is dismissed.

## BACKGROUND

Plaintiff, Mary Elizabeth Jones Dlouhy, is the named beneficiary for insurance policies covering the life of Eugene Luke. Mr. Luke's insurance was provided through his employer, Greenberry Tank & Iron Company (Greenberry). Greenberry's Group Life and Accidental Death and Dismemberment Insurance (the Group Policy) provides accident and life insurance. Key Decl. Supp. Summ. J., Ex. A. The accident insurance policy provides a $10,000 Seat Belt benefit. Id. at 33. Employees are eligible for this benefit if they are killed in an automobile accident and were "properly wearing a Seat Belt as verified on the police report..." Id. Moreover, Greenberry employees are eligible for two different types of life insurance. All employees are automatically enrolled in a basic life insurance policy. Id. at 9. The premiums for this coverage are paid by Greenberry. Id. An endorsement to the Group Policy also allows employees to purchase additional "Select Voluntary Life Insurance" coverage.

Page 2 - OPINION AND ORDER

Id. at 43-5. This voluntary coverage is exclusively paid for by the covered employee. Id. at 43. Employees who opt to purchase this coverage authorize a monthly premium deduction from their paychecks. Id. Mr. Luke purchased $300,000 of voluntary life insurance coverage beginning January 1, 2008. Mem. in Supp. of Def.'s Mot. for Summ. J., at 3.

On June 20, 2009, Mr. Luke signed a request to have certain voluntary insurance coverages, including his life insurance coverage, canceled effective August 1, 2009. Key Decl. Ex. B, at 2. This notice was presented to Greenberry. In compliance with Mr. Luke's request, the last coverage period for which Greenberry received payment for Mr. Luke's Select Voluntary Life insurance was July 2009. Strom Decl. Supp. Summ. J., at 2.

According to the terms of Greenberry's Group Policy, it is required to furnish Regence with "all data that [Regence] may require to administer the insurance under this Policy." Key Decl. Ex. A, at 7. This includes notice of all voluntary insurance terminations. Id. Mr. Luke's termination letter, however, was not sent to Regence until August 12, 2009. Key Decl. Ex. B, at 1. The letter was transmitted by email as a scanned attachment, and then printed and marked as received by Greenberry on August 20, 2009. Id. at 2. Regence sent a letter acknowledging receipt of plaintiff's request on August 21, 2009. Nelson Decl. in Resp. to Def.'s Mot. for Summ. J. Ex. 1. An official Regence change of coverage form was transmitted to Regence by Greenberry on December 1, 2009. Key Decl. Ex. C.

Mr. Luke was killed in a car accident on August 15, 2009. Strom Decl., at 3. Subsequently, Ms. Jones filed a claim with Regence for payments under Mr. Luke's voluntary life insurance policy and for the accidental death policy's Seat Belt benefit. On January 20, 2010, Regence sent a letter to Ms. Jones denying her claim for the accidental death policy's $10,000 Seat Belt benefit. Strom Decl. Ex. A. The letter notes that a copy of the Oregon Police Traffic Crash Report was received by Regence. Id. at 4. The letter states that "[t]his report notes that Mr. Luke was not using any type of restraint equipment at the time of the accident." Id. The letter concludes that "[b]ecause the police documentation does not verify that Mr. Luke was properly wearing a Seat Belt at the time of the accident, we must deny the Seat Belt Benefit proceeds for this claim." Id. Full payment for Mr. Luke's basic life and accidental death insurance policies were enclosed in the letter. Id. at 6. On January 25, 2010, Regence sent Ms. Jones' attorney its final decision denying her claim for $300,000 worth of additional voluntary life insurance coverage. Strom Decl. Ex. C. The letter states that:

> [b]ecause this coverage was voluntary, Mr. Luke was free to terminate his coverage if and when he chose to do so... We have accordingly enclosed a copy of Mr. Luke's notice, signed and dated by Mr. Luke on June 20, 2009, to cancel his Group Voluntary Life and AD&A Insurance...
> It is regrettable that [Regence] did not receive Mr. Luke's request to cancel for almost two months after submitting his written election on June 20th to cancel, but it should be reiterated that [Regence] received the June 20th cancellations prior to Mr. Luke's death, and that the Voluntary Life and Accidental Death & Dismemberment Insurance and his Voluntary Long Term Disability Buy-Up insurance coverage were fully terminated effective August 1,

2009. [The] [p]remium had been prepaid through July 31, 2009. No premium was paid, and [Regence] has not received, any premium for voluntary coverage beyond July 31, 2009."

Id. at 1.

Plaintiff filed suit on November 18, 2010, in Circuit Court of the State of Oregon for Linn County. On December 16, 2010, defendant removed this case to federal court. Defendant now moves for summary judgement.

## STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The materiality of a fact is determined by the substantive law on the issue. T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Assoc., 809 F.2d 626, 630 (9th Cir. 1987). The authenticity of a dispute is determined by whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. Id. at 324.

Page 5 - OPINION AND ORDER

Special rules of construction apply to evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. T.W. Electrical, 809 F.2d at 630.

The summary judgement standard can be modified if a claim is subject to the Employee Retirement Income Security Act (ERISA). ERISA gives the federal courts jurisdiction over claims involving benefit plans sponsored by an employer or an employee organization. See 29 U.S.C. § 1001.

**DISCUSSION**

I. The Seat Belt Benefit

Defendant argues that a police report verifying that the victim was properly wearing a seat belt is a condition precedent necessary to trigger payment of the Group Plan's Seatbelt Benefit. Defendant further argues that no such police report exists.

Defendant is correct that the Seat Belt benefit is payable only if the police report verifies that the victim was properly wearing a seat belt at the time of death. The Oregon Police Traffic Crash Report that was completed after Mr. Luke's accident found that he was not wearing any safety restraints at the time of the crash. The finding that Mr. Luke was not eligible for the

Seat Belt benefit is therefore supported by credible evidence in the record.

Plaintiff asks the Court to require defendant to produce a copy of the medical examiner's report to verify that Mr. Luke was not wearing a seat belt. Even if this report were to suggest that Mr. Luke was in fact wearing a seat belt, it would not effect this Court's judgement. According to the plain language of the Seat Belt benefit, the only question is whether the police report verifies that the victim was wearing a seat belt. There is no dispute that the police report in this case does not. Therefore, plaintiff's request is denied as moot and defendant's summary judgement motion with respect to the Seat Belt Benefit is granted.

II. Voluntary Life Insurance Claim

    A. Standard of Review

This Court finds that an abuse of discretion standard applies to plaintiff's voluntary life insurance claim. The United States Supreme Court holds that plans governed by ERISA may grant an administrator discretionary authority to "... determine eligibility for benefits or to construe the plan's terms." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 102 (1989). The usual test for summary judgment does not apply when an administrator has been granted this authority. Rather, the more deferential abuse of discretion standard applies. Bendixen v. Standard Ins. Co., 185 F.3d 939, 942-3 (9th Cir.

1999)(overruled on other grounds in Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 966-69 (9th Cir. 2006)).

With few exceptions, ERISA coverage applies to all employee life insurance plans that are established or maintained by an employer. 29 U.S.C. § 1002(1). Federal regulations, however, have created a so-called "safe harbor" provision that designates certain benefit plans to which ERISA does not apply. 29 C.F.R. § 2510.3-1(j). Plans that fall under the safe harbor provision are not subject to the abuse of discretion standard.

An employee benefit plan must meet four requirements to fall within ERISA's safe harbor provision. Stuart v. UNUM Life Ins. Co. of Am., 217 F.3d 1145, 1153 (9th Cir. 2000). Federal regulations provide that ERISA does not apply to a "group or group-type insurance program" offered to employees if:

> (1) No contributions are made by an employer or employee organization;
> (2) Participation in the program is completely voluntary for employees or members;
> (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and
> (4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 CFR § 2510.3-1(j).

Plaintiff asserts that the optional life insurance policy falls into ERISA's safe harbor provision. According to

plaintiff, this means that judicially-created ERISA law standard of judgement requirements apply. Therefore, plaintiff argues that this case should be subject to the normal summary judgement standard.

I disagree and find that plaintiff's argument has merit only if the optional life insurance policy is treated as a separate policy. Regence's Group Life and Disability Insurance Policy does not fall within ERISA's safe harbor provision. The Group Policy fails the first and second elements of the safe harbor test. The policy fails the first element because Mr. Luke's employer paid for Mr. Luke's insurance premiums. It fails the second element because enrollment in basic life and accidental death insurance was required of all Greenberry employees.

If it were a stand alone policy, Regence's Select Voluntary Life insurance coverage would fulfill these two requirements. Select Voluntary Life insurance is paid for by individual employees and enrollment is not required. I find, however, that this voluntary life insurance is not a separate insurance policy.

The provision allowing employees to purchase additional voluntary life insurance was attached to Regence's policy as an endorsement. The endorsement states:

> The Group Policy or Certificate to which this endorsement is attached is amended to provide Select Voluntary Life Insurance, subject to the terms and conditions which follow. All of the provisions in the Group Policy will apply except as specifically set forth in the endorsement.

Key Decl. Ex. A, at 43. The endorsement requires that an employee be enrolled in the employer-paid basic life insurance

plan to be eligible for additional voluntary life insurance. Id. Furthermore, the endorsement specifies that coverage will terminate when a person ceases to be an active employee. Id. Regence's voluntary life insurance coverage is not, therefore, available for purchase as a stand alone insurance plan. For these reasons, evidence in the record provides that Regence's Select Voluntary Life insurance endorsement is a feature of Regence's Group Life and Accidental Death and Dismemberment Insurance plan.

Case law similarly supports this conclusion. A trio of cases from the Tenth Circuit Court of Appeals has examined various arguments by an employee to sever optional insurance coverage from an employer-sponsored plan in order to avoid ERISA application. In each case, the appellate court held that the optional coverage should be treated as part of the primary plan. See Gaylor v. John Hancock Mut. Life Ins. Co., 112 F.3d 460 (10th Cir. 1997); Peckham v. Gem State Mut., 964 F.2d 1043 (10th Cir. 1992); Roe v. General Am. Life Ins. Co., 712 F.2d 450 (10th Cir. 1983).

Defendant also cites a recent federal court decision from this District. See Toohey v. Cigna Corp., 2009 WL 2169859 (D.Or. 2009), adopted at 2009 WL 2223622 (D. Or. 2009). Plaintiff here attempted to distinguish the facts at bar from those in Toohey. Plaintiff argued that, in Toohey, the employer paid the premiums for all of the deceased's insurance policies. In contrast, premiums for Regence's Select Voluntary Life Insurance were

Page 10 - OPINION AND ORDER

entirely paid for by Greenberry's employees. <u>Toohey</u>, however, suggests that such a distinction is immaterial. In a footnote, the court cites <u>Gaylor v. John Hancock Mut. Life Ins. Co.</u> for the proposition that "[t]he fact that some employees paid the premiums for any voluntary coverage they elected above and beyond the basic AD & D coverage does not change this result." <u>Toohey</u>, 2009 WL 2169859, 5 n.2.

The Court finds that Mr. Luke's voluntary life insurance is a feature of Regence's group policy and, therefore, ERISA law applies. Plaintiff's claim must be judged under an abuse of discretion standard.

B. Applying the Standard

Under the abuse of discretion standard, a plan administrator's decision will be upheld if it was "based upon a reasonable interpretation of the plan's terms and was made in good faith." <u>Bendixen</u>, 185 F.3d at 944 (citations omitted). An administrator abuses his or her discretion by rendering decisions without any explanation, ignoring the plain language of the plan, or by relying on clearly erroneous findings of fact when making benefit determinations. <u>Id.</u>

In general, courts will only consider the evidence reviewed by the plan administrator at the time the eligibility decision was made. <u>McKenzie v. Gen. Tel. Co. of Cal.</u>, 41 F.3d 1310, 1316 (9th Cir. 1994). If the plaintiff, however, alleges that the plan administrator was operating under a conflict of interest, a court may "consider evidence outside the administrative record to

Page 11 - OPINION AND ORDER

decide the nature, extent, and effect on the decision-making process of any conflict of interest." <u>Abatie v. Alta Health & Life Ins. Co.</u>, 458 F.3d 955, 970 (9th Cir. 2006). The decision on the merits, however, rests on the administrative record. <u>Id.</u>

Plaintiff argues that she should survive summary judgement for two reasons. Plaintiff first argues that the termination of Mr. Luke's insurance coverage was not effective because there is evidence that Regence did not receive a copy of Mr. Luke's termination request until after the August 15th accident. Plaintiff notes that while the email containing Mr. Luke's June 20, 2009, termination request letter was sent on August 12, 2009, the letter itself is marked as received by Regence on August 20, 2009. Furthermore, Regence did not prepare a letter confirming that it had received Mr. Luke's notice until August 21, 2009. Finally, Greenberry did not fax Regence Mr. Luke's change in coverage form until December 1, 2009.

Defendant argues that ultimately it does not matter when Regence received Mr. Luke's written cancellation. Defendant asserts that Mr. Luke was free to terminate his voluntary life insurance coverage at any time without contacting Regence directly. Defendant argues that an effective termination occurred when Mr. Luke requested that his employer end his coverage on August 1, 2009, resulting in Greenberry's compliance by not sending any premium payments for coverage beyond that date.

Page 12 - OPINION AND ORDER

Plaintiff's argument seems to be based on the traditional contract rules of offer and acceptance. This argument might have merit if there existed a bilateral contract between Mr. Luke and Regence. See <u>Yosco v. Aviva Life and Annuity Co.</u>, 753 F.Supp.2d 607, 610 (E.D. Va. 2010). However, no such contract exists here. Furthermore, ERISA preempts state law contract claims. 29 U.S.C. § 1144(a).

The Court, therefore, looks to the language of the policy to determine when a cancellation becomes effective. Nothing in the policy makes an effective cancellation dependant upon an employee giving Regence direct notice of an intended cancellation. To the contrary, the Group Policy makes it Greenberry's responsibility to furnish Regence with all data that may be required to administer the insurance plan. The Group Life and Disability Insurance Certificate of Coverage specifies the conditions under which an employee's insurance coverage ends. One possible ending date is "the last day of the period for which you have made any required contribution (Contributory Insurance)." Key Decl. Ex. A, at 16. The uncontested declaration of Edith Strom states that Regence did not receive any Select Voluntary Life insurance payments for Mr. Luke for August 2009. Therefore, the fact that Regence may have received Mr. Luke's cancellation notice after his death is irrelevant to the motion.

Plaintiff's second argument is that Mr. Luke's coverage was in effect for August 2009, because Oregon law provides a grace

Page 13 - OPINION AND ORDER

period of 31 days for the payment of late premiums. Pls' Memo 8. Oregon law provides that:

> A group life insurance policy shall contain a provision that the policyholder is entitled to a grace period of 31 days for the payment of any premium due except the first, during which grace period the death benefit coverage shall continue in force, unless the policyholder shall have given the insurer written notice of discontinuance in advance of the date of discontinuance and in accordance with the terms of the policy.

ORS § 743.312. Plaintiff argues that this provision applies to Mr. Luke's insurance coverage. She further argues that because Mr. Luke's death occurred during this grace period, his voluntary life insurance policy was in force. It would, of course, be an abuse of discretion for a plan administrator to render a decision that is contrary to applicable state law.

Oregon's grace period law, however, does not apply to individual employee insurance coverage provided under an ERISA group plan. ERISA preempts "[s]tate laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. 29 U.S.C. § 1144(a). However, ERISA also contains a clause that saves from preemption "any law of any State which regulates insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A). The courts have developed a two part test to determine whether a state law falls within the scope of this savings clause. Kentucky Ass'n of Health Plans, Inc. v. Miller, 538 U.S. 329, 342 (2003). "First, the state law must be specifically directed toward entities engaged in insurance." Id. Second, it "must substantially affect the risk pooling arrangement between the insurer and the insured." Id. This Court

Page 14 - OPINION AND ORDER

need not decide whether Oregon's grace period law can meet this test because even assuming that Oregon's grace period law applies, it does not apply to Mr. Luke. Oregon law entitles a "policyholder" to a 31-day grace period. The term "policyholder" typically refers to the party that has contracted for insurance coverage. See Key Decl. Ex. A, at 14. The relevant Oregon statute does not define "policyholder." It does, however, define "policy" as "the written contract or written agreement for or effecting insurance." O.R.S. § 731.122. This suggests that the term "policyholder" is meant to refer to a party to the insurance contract. Furthermore, Oregon defines "certificate holder" as "an employee or member of a group insured under a group insurance policy." O.R.S. § 731.069. This means that, under Oregon law, an employee entitled to life insurance under an employee-sponsored group insurance policy is something other than a "policyholder." Thus, the Oregon State Legislature intended a 31-day grace period to apply to an employer who provides group insurance coverage but not to the covered employees.

This conclusion is supported by case law from other jurisdictions. For example, Arkansas state courts have held that their statutory grace period is personal to the employer and does not extend to the employee. Hendrix v. Republic Nat. Life Ins. Co., 270 Ark. 955, 958, 606 S.W.2d 601, 602-3 (Ark. App. 1980). It also appears that Regence reached the same conclusion when it drafted the insurance policy currently before this Court. The Group Life and Disability Insurance Policy provides that, as the

Page 15 - OPINION AND ORDER

policyholder, Greenberry will be afforded a 31-day grace period before its insurance coverage terminates. Key Decl. Ex. A, at 6. However, the Group Life and Disability Insurance Certificate of Coverage contains no such provision for covered employees.

Some state courts have held that where an employee contributes to premium payments, "there is a contractual relationship between the insured employees and the insurer." Abbiati v. Buttura & Sons, Inc., 161 Vt. 314, 318, 639 A.2d 988, 990-1 (1994). However, no Oregon court has issued such a ruling. Oregon law, currently, does not allow this Court to find that a contractual relationship existed between Mr. Luke and Regence. Therefore, Oregon's 31-day grace period does not apply to Mr. Luke.

## CONCLUSION

Defendant's motion for summary judgment (doc. # 8) is GRANTED. This case is dismissed and all pending motions are denied as moot.

IT IS SO ORDERED.

Dated this 30th of November 2011.

_____
Ann Aiken
United States District Judge